**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| DR. MARY LOUISE SERAFINE, | ) |
| | ) |
| Plaintiff, | ) No. 11-cv-01018-LY |
| | ) |
| v. | ) |
| | ) |
| TIM F. BRANAMAN, Chairman, Texas | ) **PLAINTIFF'S RESPONSE IN OPPOSITION** |
| State Board of Examiners of | ) **TO DEFENDANTS' MOTION TO DISMISS** |
| Psychologists, in his official capacity; | ) |
| and SHERRY L. LEE, Executive | ) |
| Director, Texas State Board of | ) |
| Examiners of Psychologists, in her | ) |
| official capacity, | ) |
| | ) |
| Defendants. | ) |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................. 3

FACTUAL BACKGROUND .......................................................... 4

ARGUMENT ................................................................................. 5

I.      STANDARD OF REVIEW ..................................................... 5

II.     THE PSYCHOLOGISTS' LICENSING ACT CENSORS DR.
        SERAFINE'S CONSTITUTIONALLY PROTECTED POLITICAL
        SPEECH .............................................................................. 6

III.    THE PSYCHOLOGISTS' LICENSING ACT
        UNCONSTITUTIONALLY CHILLS PROTECTED SPEECH
        BECAUSE IT IS VAGUE AND OVERBROAD...................... 10

        A.      The Psychologists' Licensing Act Is Void For Vagueness .............. 10

        B.      The Psychologists' Licensing Act Is Overbroad ............................ 14

IV.     THE PSYCHOLOGISTS' LICENSING ACT IS A PRIOR
        RESTRAINT ON SPEECH.................................................... 16

V.      THE PSYCHOLOGISTS' LICENSING ACT CENSORS DR.
        SERAFINE'S CONSTITUTIONALLY PROTECTED
        COMMERCIAL SPEECH .................................................... 19

VI.     THE PSYCHOLOGISTS' LICENSING ACT DRAWS
        UNREASONABLE DISTINCTIONS THAT
        UNCONSTITUTIONALLY IMPAIR DR. SERAFINE'S SPEECH
        RIGHTS............................................................................... 21

VII.    THE PSYCHOLOGISTS' LICENSING ACT UNREASONABLY
        AND ARBITRARILY INTERFERES WITH DR. SERAFINE'S
        RIGHT TO EARN A LIVING ............................................... 24

CONCLUSION ............................................................................. 28

APPENDIX

Plaintiff, Dr. Mary Louise Serafine, by and through her undersigned attorneys, hereby responds to Defendants' Motion to Dismiss (Doc. 18).

## INTRODUCTION

In this civil rights lawsuit, Dr. Serafine challenges a regulatory scheme of sweeping breadth.  In fact, Defendants' asserted authority to regulate psychology pursuant to the Texas Occupations Code is so broad that Defendants' enforcement of this purportedly economic regulation works to censor Dr. Serafine's political speech.  Defendants' enforcement of the Texas Occupations Code unconstitutionally infringes upon Dr. Serafine's political speech, her ability to describe her education and expertise in a social context, the practice of her profession, and her ability to advertise her services.  On December 28, 2011, Defendants moved to dismiss Dr. Serafine's claims.  Defendants' Motion to Dismiss proceeds from the false premise that the State's police power trumps Dr. Serafine's constitutional rights.  Defendants' also misstate the character of the speech at issue here as purely commercial, yet only Dr. Serafine's Fifth Claim for Relief implicates commercial speech.  Defendants make these arguments without ever acknowledging the sweeping breadth of the regulatory scheme or measuring the text of the statute against the appropriate standards of constitutional review.

Defendants purport to regulate the entire field of psychology, but Chapter 501 of the Texas Occupations Code ("Psychologists' Licensing Act," Tex. Occ. Code § 501.001), does so in a manner that is not narrowly tailored to serve compelling state interests.  Dr. Serafine submits that the Psychologists' Licensing Act and its related administrative regulations, sweep more broadly than necessary and unconstitutionally impair protected speech.  Accepting the truth of

the allegations in the Complaint, and drawing all inferences in the light most favorable to Plaintiffs, this Court should deny Defendants' Motion to Dismiss.

## **FACTUAL BACKGROUND**

The Psychologists' Licensing Act prohibits "the practice of psychology" without a license issued by Defendants.  Tex. Occ. Code § 501.251 ("A person may not engage in or represent that the person is engaged in the practice of psychology unless the person is licensed under this chapter . . . .").  The Act defines "the practice of psychology" broadly, to include certain uses of "the word 'psychological,' 'psychologist,' or 'psychology,'" as well as "provid[ing] or offer[ing] to provide psychological services to individuals, groups, organizations, or the public."  *Id.* § 501.003(b).  The Act further defines the practice of psychology to include essentially any speech based on "established principles, methods, and procedures of describing, explaining, and ameliorating behavior."  *Id.* § 501.003(c).  There is no requirement that a commercial transaction be proposed in order for an individual to come within Defendants' jurisdiction under the Act.  *Id.*

Indeed, according to Defendants, Dr. Serafine's use of the word "psychologist" on her political website and in public records related to her candidacy for the Texas Senate violates the Psychologists' Licensing Act.  Compl. ¶ 28 (Doc. 1); Defs.' Original Answer ("Answer") ¶ 28 (Doc. 17).[1]  On September 15, 2010, September 28, 2010, and January 4, 2011, Defendants ordered Dr. Serafine to cease describing herself to voters as an "Austin attorney and

---

[1] Although this Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor at the motion to dismiss stage, Defendants' Answer indicates that they dispute very few of the facts alleged in the Complaint.

psychologist," Compl. ¶¶ 23, 24, 38, despite her extensive training, accomplished academic career, and numerous publications in the field of psychology.  Compl. ¶¶ 6–14.

The sweeping breadth of the Psychologists' Licensing Act also prohibits Dr. Serafine from engaging in social, noncommercial speech if she describes herself or her training using "the word 'psychological,' 'psychologist,' or 'psychology,'" or if she simply provides advice that draws on her knowledge of "established principles, methods, and procedures of describing, explaining, and ameliorating behavior."  *Id*. § 501.003(b), (c); Compl. ¶¶ 52; 68–87; Answer ¶ 52.  In addition, Dr. Serafine is prohibited from engaging in similar speech as a professional psychologist and in commercial advertisements.  Compl. ¶¶ 39–48; Answer ¶¶ 42, 45.

In light of Defendants' ongoing efforts to silence Dr. Serafine's political speech, and the sweeping breadth of the Psychologists' Licensing Act's regulation of the field of psychology, Dr. Serafine filed the instant action on November 29, 2011.  Defendants responded by filing a Motion to Dismiss and an Answer on December 28, 2011.

## ARGUMENT

## I.   STANDARD OF REVIEW.

When reviewing a motion to dismiss for failure to state a claim, "the complaint is construed in the light most favorable to plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in plaintiff's favor."  *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  Defendants bear the burden of proving that the Psychologists' Licensing Act does not violate the Constitution as applied to Dr. Serafine, and Dr. Serafine must ultimately rebut any evidence offered by Defendants; but at the motion to dismiss stage, this Court must assume that Dr. Serafine can prove her case, even if it strikes this Court

"that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). Accepting the truth of the allegations in the Complaint, and drawing all inferences in the light most favorable to Dr. Serafine, this Court should deny Defendants' Motion to Dismiss.

## II.   THE PSYCHOLOGISTS' LICENSING ACT CENSORS DR. SERAFINE'S CONSTITUTIONALLY PROTECTED POLITICAL SPEECH.

Dr. Serafine's First Claim for Relief alleges that Defendants' enforcement of the Psychologists' Licensing Act violates her First Amendment right to engage in political speech. Compl. ¶¶ 54–67. Defendants argue that Dr. Serafine's political speech lacks First Amendment protection because it "is only incidental to the bona fide political speech of her campaign for electoral office." Defs.' M. to. Dismiss at 10. Moreover, Defendants suggest that Dr. Serafine can communicate her background in psychology to voters without using the prohibited terms—psychological, psychologist, or psychology—although Defendants do not suggest how this feat of linguistic gymnastics could be performed. *Id*. Defendants' arguments are foreclosed by Supreme Court precedent, which holds that communicating with voters about a candidate's identity is core political speech subject to the highest First Amendment protections. *Buckley v. Valeo*, 424 U.S. 1, 14–15 (1976). Therefore, Defendants bear the burden of proving that their enforcement of the Psychologists' Licensing Act against Dr. Serafine "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. Federal Election*

*Com'n*, 558 U.S. ___, 130 S. Ct. 876, 898 (2010) (quotation omitted).  At the motion to dismiss

stage, Defendants are prohibited from presenting evidence in an attempt to meet this heavy

burden.  Accepting the truth of the allegations in the Complaint, and drawing all inferences in the

light most favorable to Plaintiff, Defendants' Motion to Dismiss should be denied.

Defendants' argument that Dr. Serafine's speech related to her accomplishments in the

field of psychology is only "incidental" to her political campaign—and therefore not protected

political speech—has been rejected by the Supreme Court.  *See Buckley*, 424 U.S. at 14–15;

*Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 790–91 (1988)

("The First Amendment mandates that we presume that speakers, not the government, know best

both what they want to say and how to say it.").  Dr. Serafine's background and training define

her identity.  Compl. ¶ 8.  The Supreme Court has ruled that the identity of a candidate cuts to

the heart of the political dialogue:  "The ability of the citizenry to make informed choices among

candidates for office is essential, for the identities of those who are elected will inevitably shape

the course that we follow as a nation."  *Buckley*, 424 U.S. at 14–15.  That is why "[d]iscussion of

public issues and *debate on the qualifications of candidates* are integral to the operation of the

system of government established by our Constitution."  *Id.* (emphasis added).  Because open

discussion of candidates is of foundational significance to the republican form of government,

the Supreme Court "has recognized that the First Amendment has its fullest and most urgent

application to speech uttered during a campaign for political office."  *Burson v. Freeman*, 504

U.S. 191, 196 (1992) (quotations omitted).  It is not for Defendants to decide what attributes of

Dr. Serafine's education and experience the voters consider relevant; instead, the First

Amendment guarantees the free-flow of information so that the voters can decide that question

for themselves.[2]  *Citizens United*, 130 S. Ct. at 898 ("political speech must prevail against laws that would suppress it, whether by design or inadvertence.").

In a tacit admission that Dr. Serafine's political website is protected political speech, Defendants suggest that "she can 'inform voters' of the facts listed in her paragraphs 7 and 10-14 [of the Complaint]" without using the prohibited terms psychological, psychologist, or psychology.  Defs.' M. to. Dismiss at 10.  This is a peculiar proposition.  For example, paragraph 7 of the Complaint alleges that "Dr. Serafine has been listed as a psychologist in *Who's Who in America*, *Who's Who of American Women*, and in other publications."  Compl. ¶ 7.  It is unclear how Dr. Serafine could tell voters that she has been honored as a psychologist if she may not lawfully use the term psychologist to describe herself.  The information contained in paragraphs 10–14 of her complaint would be similarly impossible to convey without using the terms that Defendants have prohibited from the political dialogue.

"Laws that burden political speech are subject to strict scrutiny."  *Citizens United*, 130 S. Ct. at 898 (quotation omitted).  Because Dr. Serafine's communication to voters about her background and education is core political speech, Defendants must show that their enforcement of the Psychologists' Licensing Act against Dr. Serafine "furthers a compelling interest and is narrowly tailored to achieve that interest."  *Id*. (quotation omitted).  Defendants cannot meet their

---

[2] Putting aside the fact that Defendants' asserted authority over Dr. Serafine's political speech is plainly unconstitutional, Defendants' suggestion that Dr. Serafine's education and experience as a psychologist are not relevant to her qualifications for elected office is also internally inconsistent.  Defs.' M. to. Dismiss at 10.  Defendants first argue that the State of Texas takes such fervent interest in psychology that Defendants must have "near-plenary authority" over the field of psychology.  *Id*. at 3.  But Defendants next suggest that Dr. Serafine's training as a psychologist is of no interest to Texas voters.  *Id*. at 10.  Either Texans care about the field of psychology or they do not.  As demonstrated herein, the logical infirmity of Defendants' argument pales in comparison to its constitutional infirmities.

burden.  Assuming, arguendo, that Texas has a compelling interest in regulating the field of psychology, the Psychologists' Licensing Act is not narrowly tailored to achieve that interest.  A restriction is not narrowly tailored if it "burden[s] substantially more speech than is necessary to further the government's legitimate interests."  *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).  Defendants enforcement of the Psychologists' Licensing Act fails this test.

The purpose of the Act has been described as "to protect the public from unqualified practitioners in the field of psychology."  *Bloom v. Texas State Bd. of Examiners of Psychologists*, 475 S.W.2d 374, 377 (Tex. Civ. App. 1972), *rev'd on other grounds*, 492 S.W.2d 460 (Tex. 1973); Defs.' M. to. Dismiss at 4.  Dr. Serafine's political website does not use the term "psychologist" as a commercial advertisement for her services as a psychologist, or in any way that could conceivably harm the public.  Instead, she is merely using the term to accurately inform the voters about her background and qualifications.  Regardless of whether Dr. Serafine holds a psychology license issued by Defendants, she is, truthfully, a psychologist by training and experience.  Yet, according to Defendants, the Psychologists' Licensing Act prohibits Dr. Serafine's political speech conveying that information to voters.  Defendants fail to explain how this prohibition on political speech is narrowly tailored to achieve the goals of a statute concerned with economic regulation.  If this truthful campaign speech falls within the purview of the Texas law, then the law is not narrowly tailored to protect the public from the services of bad psychologists.[3]  *Byrum v. Landreth*, 566 F.3d 442, 448 (5th Cir. 2009) (even under intermediate

---

[3] Defendants dispute that Dr. Serafine may truthfully call herself a psychologist.  Defs.' M. to Dismiss at 7, 10, 15.  In so doing, they make the same "circular argument" rejected by the Fifth Circuit in *Byrum*:  "It runs: Texas created a licensing regime; therefore, unlicensed interior designers who refer to themselves as interior designers will confuse consumers who will expect them to be licensed.  The descriptive terms 'interior designer'

scrutiny, a regulation is invalid if it "prohibits significant truthful speech"). Accordingly, Defendants' Motion to Dismiss should be denied.

## III.   THE PSYCHOLOGISTS' LICENSING ACT UNCONSTITUTIONALLY CHILLS PROTECTED SPEECH BECAUSE IT IS VAGUE AND OVERBROAD.

In addition to the burdens that Defendants' enforcement of the Psychologists' Licensing Act places on Dr. Serafine's political speech, the sweeping breadth of the law also constrains almost any speech in which she engages. This includes social speech devoid of any commercial purpose. This speech is entitled to the highest constitutional protection. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid."). Dr. Serafine's Second and Third Claims for Relief allege that this violates her First Amendment right to speech because the Psychologists' Licensing Act is unconstitutionally vague and overbroad. Compl. ¶¶ 68–87.

### A.   The Psychologists' Licensing Act Is Void For Vagueness.

The definition of "the practice of psychology" employed by Texas Occupations Code § 501.003 is void for vagueness. A law is void for vagueness, if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," or "because it encourages arbitrary and erratic arrests and convictions." *Papachristou v. City of*

---

and 'interior design' are not, however, inherently misleading. . . . This argument also proves too much, as it would authorize legislatures to license speech and reduce its constitutional protection by means of the licensing alone." 566 F.3d at 447. If Defendants' argument were accepted, then distinguished academic psychologists would violate the Psychologists' Licensing Act if they referred to themselves as psychologists or doctors of psychology upon retirement. Tex. Occ. Code § 501.004(a)(1); *see, e.g.,* Faculty (Retired), University of Texas at Austin, http://www.psy.utexas.edu/psy/announcements/retirement.html. Indeed, this is precisely the position in which Dr. Serafine finds herself.

*Jacksonville*, 405 U.S. 156, 162 (1972) (citations omitted).  Laws such as the Psychologists'

Licensing Act, which impose criminal penalties on speech, are subject to the highest form of

scrutiny.  *Id*. at 163; *Grayned v. City of Rockford*, 408 U.S. 104, 116–17(1972) ("Our cases make

clear that in assessing the reasonableness of a regulation, we must weigh heavily the fact that

communication is involved; the regulation must be narrowly tailored to further the State's

legitimate interest." (quotations omitted)).  As demonstrated below, the Psychologists' Licensing

Act fails to give fair notice of what speech is prohibited and encourages arbitrary enforcement.

It is therefore unconstitutionally vague.[4]

The Psychologists' Licensing Act fails to give fair notice of what speech is prohibited by

defining the practice of psychology using vague, undefined terms that encompass nearly any

advice or counsel based on "established principles, methods, and procedures of describing,

explaining, and ameliorating behavior."[5]  Tex. Occ. Code § 501.003(c)(1).  For example, a

casual discussion or lesson involving the psychological aspects of golf would constitute

"providing . . . services to an individual or group . . . that include the application of established

principles, methods, and procedures of describing, explaining, and ameliorating behavior . . . and

---

[4] Defendants' reliance on *Roark & Hardee LP v. City of Austin* is misplaced, because
constitutionally protected speech was not at issue in that case.  522 F.3d 533, 551 (5th
Cir. 2008) ("Because the ordinance does not threaten to inhibit constitutionally protected
conduct, we continue under the rubric in *Village of Hoffman Estates* and consider
whether the ordinance is impermissibly vague in all its applications."); *Village of
Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) ("A law
that does not reach constitutionally protected conduct and therefore satisfies the
overbreadth test may nevertheless be challenged on its face as unduly vague, in violation
of due process.  To succeed, however, the complainant must demonstrate that the law is
impermissibly vague in all of its applications").  Here, constitutionally protected speech
is implicated; therefore, this Court must not "continue under the rubric in *Village of
Hoffman Estates*."  Rather, the test applied in *Papachristou* controls here.

[5] The relevant provision, Tex. Occ. Code § 501.003, is attached hereto as an Appendix.

is based on a systematic body of knowledge and principles acquired in an organized program of graduate study . . . ."  Tex. Occ. Code § 501.003(c).  No definition of what constitutes "established principles, methods, and procedures" or "systematic body of knowledge" is offered by or referenced in the Act (or the implementing regulations).  *See* 22 Tex. Admin. Code § 465.1.

"Providing services" is also undefined and, both on its face and as applied to Dr. Serafine, the Psychologists' Licensing Act has no commercial limitation; there is no requirement that a commercial transaction be proposed in order for an individual to "provide services" within Defendants' jurisdiction under the Act.  *Compare* Tex. Occ. Code § 501.003(b)(2) (no requirement of "consideration") *with id.* § 501.003(b)(3) and (4) (requiring "consideration"); *see also* 22 Tex. Admin. Code § 465.1(8) ("'Professional relationship' is any relationship . . . ."); *compare also, e.g.,* Tex. Occ. Code § 1601.002(1) ("'barbering' . . . means: . . . performing or offering or attempting to perform for compensation or the promise of compensation any of the following services . . . .").  This means that there is no bright-line distinction between lawful and unlawful psychological advice, so that "men of common intelligence must necessarily guess at [the law's] meaning and differ as to its application."  *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926); *Papachristou*, 405 U.S. at 162; *see also Solomon v. City of Gainesville*, 763 F.2d 1212, 1214 (11th Cir. 1985) (holding a Gainesville, Florida, sign ordinance facially unconstitutional because of overbreadth and vagueness and noting, "[n]owhere does the ordinance explicitly differentiate between commercial and non-commercial speech.").

Given the distinct lack of any commercial element in the definition of the practice of psychology, the Act is not limited to only formal patient/psychologist relationships.  *Cf.*

*Accountant's Soc. of Virginia v. Bowman*, 860 F.2d 602, 605 (4th Cir. 1988) ("Clearly the relationship between accountant and client gives rise to a personal nexus between professional and client." (quotation omitted)).  Even teaching from books that delve into the psychology of activities could "provide services" to individuals within the meaning of the Psychologists' Licensing Act.  *See, e.g.,* W. Timothy Gallwey, THE INNER GAME OF GOLF (2009) (billed as "[t]he best sports psychology book ever written about golf."); David L. Hough, PROFICIENT MOTORCYCLING: THE ULTIMATE GUIDE TO RIDING WELL 41 (2000) (recommending riding strategies based on psychological research involving sensory perception).  Presumably also covered by the Act are consulting services, sports lessons, and any other communication based on "established principles, methods, and procedures of describing, explaining, and ameliorating behavior."

The Act thus fails to draw a line between where simple advice ends and the "practice of psychology" begins.  The only way to know if the Psychologists' Licensing Act applies to a conversation involving "established principles, methods, and procedures of describing, explaining, and ameliorating behavior" is to ask Defendants for permission to speak, or wait for a cease and desist letter.  This degree of uncertainty in the First Amendment context causes an unconstitutional chilling effect on speech.  *Grayned*, 408 U.S. at 109 ("Laws which contain "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden area were clearly marked.").  The definition of "the practice of psychology" employed by Texas Occupations Code § 501.003(c) is therefore void for vagueness.

Further, as demonstrated above, Defendants' enforcement of the Psychologists' Licensing Act has been arbitrary.  *See City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) ("The

13

broad sweep of the ordinance also violates the requirement that a legislature establish minimal guidelines to govern law enforcement." (quotation omitted)).  Defendants have enforced what they describe as economic regulations in a purely political dialogue between Dr. Serafine and voters.  They were able to claim the authority to do so because the Psychologists' Licensing Act is unconstitutionally vague in that it sets no objective limits on the discretion of Defendants to enforce the Act.  Defendants are likewise free to attack social speech by individuals engaged in discussions of behavior.  Accordingly, there are no constitutionally adequate limits on Defendant's enforcement authority under the Texas psychology laws.  *See Morales*, 527 U.S. at 60.

> **B.**     **The Psychologists' Licensing Act Is Overbroad.**

The definition of "the practice of psychology" employed by Texas Occupations Code § 501.003 is unconstitutionally overbroad.  "If, at the expense of First Amendment freedoms, a statute reaches more broadly than is reasonably necessary to protect legitimate state interests, a court may forbid its enforcement."  *Reeves v. McConn*, 631 F.2d 377, 383 (5th Cir. 1980).  The purpose of the Psychologists' Licensing Act has been described as "to protect the public from unqualified practitioners in the field of psychology."  *Bloom*, 475 S.W.2d at 377; Defs.' M. to. Dismiss at 4.  Yet, as demonstrated above, Defendants' enforcement of the Psychologists' Licensing Act reaches far beyond practitioners of psychology; Defendants' asserted authority covers any political speech or casual conversation that touches on issues that are, arguably, psychological in nature.  The Act is not, for example, limited to regulation of advertising for psychological services.  *Cf. Florida Bar v. Went for It, Inc.*, 515 U.S. 618 (1995).  Thus, the Texas psychology "law punishes a substantial amount of protected free speech, judged in relation

14

to the statute's plainly legitimate sweep . . . ." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (quotations omitted).  The law is therefore unconstitutional in all its applications.  *See id.*

Defendants attempt to evade the all-encompassing reach of the Psychologists' Licensing Act by suggesting that the statute merely regulates pecuniary transactions.  Defs.' M. to Dismiss at 5.  As demonstrated above, the Act reaches far beyond the commercial realm.  Defendants rely on Justice Jackson's concurrence in *Thomas v. Collins*, but Justice Jackson in that case illuminates the distinction that Defendants seek to obscure:  "The modern state owes and attempts to perform a duty to protect the public from those who seek for one purpose or another to obtain its money."  323 U.S. 516, 545 (1945) (Jackson, J., concurring).  As demonstrated above, there is no requirement that a commercial transaction be proposed in order for an individual to come within Defendants' jurisdiction under the Psychologists' Licensing Act.  The Ninth Circuit's decision in *National Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, upon which Defendants principally rely, is similarly inapposite.  228 F.3d 1043, 1047 (9th Cir. 2000) ("The practice of psychology in California requires a license and is defined as rendering any psychological service to the public 'for a fee.'").  By regulating all speech related to "established principles, methods, and procedures of describing, explaining, and ameliorating behavior," the Psychologists' Licensing Act sweeps far wider than necessary to protect the public from unqualified practitioners.

As the Eleventh Circuit explained in *Solomon v. City of Gainesville*, the broad sweep of a statute prohibiting both commercial and non-commercial speech subjects the statute to exacting overbreadth scrutiny:

> Nowhere does the ordinance explicitly differentiate between commercial and non-
> commercial speech.  Indeed, owners or occupants of a particular property in

Gainesville may wish to display a street graphic with no commercial purposes but which involves protected speech. . . .  Overbreadth results because Section 29-100(b)(2) by its broad, undefined terms necessarily sweeps within its ambit both protected and unprotected speech.

763 F.2d 1212, 1215 (11th Cir. 1985) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

Defendants' Motion to Dismiss fails to acknowledge the sweeping breadth of the Psychologists' Licensing Act and thus Defendants have offered no justification to support the law's unreasonably broad reach.  Accordingly, Defendants' Motion to Dismiss should be denied.

## IV.   THE PSYCHOLOGISTS' LICENSING ACT IS A PRIOR RESTRAINT ON SPEECH.

Dr. Serafine's Fourth Claim for Relief alleges that Defendants' enforcement of the Texas Psychologists' Licensing Act violates her First Amendment right to engage in speech as a professional psychologist.  Compl. ¶¶ 88–103.  The Psychologists' Licensing Act functions as an unconstitutional prior restraint on speech.  "[P]rior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights."  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  "[E]xpert advice or assistance" is a form of speech that is protected under the First Amendment.  *Holder v. Humanitarian Law Project*, 561 U.S.___, 130 S. Ct. 2705, 2723–24 (2010).  Psychological advice is not commercial speech, even if a person pays to receive the advice.  *See Riley*, 487 U.S. at 801 ("It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak."); *Argello v. City of Lincoln*, 143 F.3d 1152, 1153 (8th Cir. 1998) ("The speech itself, fortunetelling, is not commercial simply because someone pays for it.").  As demonstrated above, the Psychologists' Licensing Act requires individuals to obtain a license prior to giving advice or counsel that is based on "established principles, methods, and

16

procedures of describing, explaining, and ameliorating behavior."  Tex. Occ. Code §
501.003(c)(1).

Regulations that require licensure as a precondition for engaging in speech are presumed
to be unconstitutional, and can be saved "only if the government can establish that the activity
restrained poses either a clear and present danger or a serious and imminent threat to a protected
competing interest."  *United States v. Brown*, 218 F.3d 415, 425 (5th Cir. 2000) (internal
quotation omitted); *see also Watchtower Bible and Tract Society of New York, Inc. v. Village of
Stratton*, 536 U.S. 150, 165 (2002) (for licensure requirements that regulate speech to be
constitutional, the court must look at "the amount of speech covered by the [law] and whether
there is an appropriate balance between the affected speech and the governmental interests that
the [law] purports to serve."); *Riley*, 487 U.S. at 801 ("[T]he State's asserted power to license
professional fundraisers carries with it (unless properly constrained) the power directly and
substantially to affect the speech they utter.").  Broad licensure requirements that regulate speech
are:

> [O]ffensive—not only to the values protected by the First Amendment, but to the
> very notion of a free society—that in the context of everyday public discourse a
> citizen must first inform the government of her desire to speak to her neighbors
> and then obtain a permit to do so.  Even if the issuance of permits by the mayor's
> office is a ministerial task that is performed promptly and at no cost to the
> applicant, a law requiring a permit to engage in such speech constitutes a dramatic
> departure from our national heritage and constitutional tradition.

*Watchtower Bible*, 536 U.S. at 165–66.  As a result, if there are less restrictive means for
achieving the government's important interests, the licensing regulation is unconstitutional.  *Id*.
at 168–69.

The purpose of the Psychologists' Licensing Act has been described as "to protect the

17

public from unqualified practitioners in the field of psychology." *Bloom*, 475 S.W.2d at 377.

This described purpose is unrelated to any clear and present danger or a serious and imminent

threat.  Psychologists themselves cannot agree on what constitutes effective treatment.  *See* John

C. Norcross, et al., *Discredited Psychological Treatments and Tests: A Delphi Poll*, Professional

Psychology: Research and Practice Vol. 37, No. 5, 515–522 (2006) (American Psychological

Association) ("[L]ittle consensus currently exists among the various stakeholders on either the

decision rules to determine effectiveness or the treatments designated as 'evidence-based.'").

Indeed, the Psychologists' Licensing Act recites no legislative findings regarding the interests

served by the statute.  *Cf. National Ass'n for Advancement of Psychoanalysis*, 228 F.3d at 1047

(The statute "includes a legislative finding that the 'practice of psychology in California affects

the public health, safety, and welfare . . . .'" (quoting Cal. Bus. & Prof. Code § 2900)).

Moreover, the regulatory scheme is not narrowly tailored to achieve a significant government

interest because, as demonstrated above, it "burden[s] substantially more speech than is

necessary."  *Ward*, 491 U.S. at 798.

   Defendants bear the burden of proving that the Psychologists' Licensing Act does not

violate the Constitution.  *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 379 (2000)

("This Court has never accepted mere conjecture as adequate to carry a First Amendment

burden."); *see also City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438–39 (2002).

Defendants' burden, therefore, is to offer evidence to prove that the Psychologists' Licensing Act

"furthers a compelling interest and is narrowly tailored to achieve that interest."  *Citizens United*,

130 S. Ct. at 898 (quotation omitted).  Moreover, Plaintiff must then have an opportunity to

"rebut the [Defendants'] proffered evidence."  *Abilene Retail No. 30, Inc. v. Dickinson County*,

492 F.3d 1164, 1174 (10th Cir. 2007).  This evidentiary inquiry is inappropriate at the motion to dismiss stage.  *Smith*, 561 F.3d at 1098 ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (internal quotation omitted)).

Dr. Serafine's psychology practice consists exclusively of speech and communication. The Psychologists' Licensing Act's prohibition on the unlicensed practice of psychology necessarily creates a prior restraint upon Dr. Serafine's speech.  On its face, the Psychologists' Licensing Act fails to provide a justification for the prior restraint on speech imposed by the statute.  Defendants may attempt to save the statute through post hoc rationalizations only upon an evidentiary showing that the law is narrowly tailored to achieve a compelling interest.  *R.A.V.*, 505 U.S. at 395.  Because they are prohibited from offering evidence at this stage, Defendants' Motion to Dismiss should be denied.

## V.  THE PSYCHOLOGISTS' LICENSING ACT CENSORS DR. SERAFINE'S CONSTITUTIONALLY PROTECTED COMMERCIAL SPEECH.

Dr. Serafine's Fifth Claim for Relief alleges that Defendants' enforcement of the Texas Psychologists' Licensing Act violates her First Amendment right to engage in commercial speech advertising her services as a lawyer and psychologist.  Compl. ¶¶ 104–15.  The Psychologists' Licensing Act's prohibition on the truthful use of the words "psychological," "psychologist," and "psychology" is subject to heightened constitutional scrutiny because it "imposes more than an incidental burden on protected expression."  *Sorrell v. IMS Health Inc.*, ___ U.S. ___, 131 S. Ct. 2653, 2665 (2011).  In a case such as this, where Defendants seek to impose content-based restrictions on speech, "the State must show at least that the statute

directly advances a substantial governmental interest and that the measure is drawn to achieve that interest.  There must be a fit between the legislature's ends and the means chosen to accomplish those ends."  *Id.* at 2667–68 (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980)).  Defendants must also show that the law "reaches no further than necessary to accomplish the given objective."  *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981).

Defendants suggest that Dr. Serafine's speech advertising herself and her services using the prohibited terms is not subject to First Amendment protection because it is "inherently misleading."  Defs.' M. to Dismiss at 15.  As discussed above, this is the same "circular argument" rejected by the Fifth Circuit in *Byrum*:

> [The argument] runs:  Texas created a licensing regime; therefore, unlicensed interior designers who refer to themselves as interior designers will confuse consumers who will expect them to be licensed.  The descriptive terms 'interior designer' and 'interior design' are not, however, inherently misleading. . . .  This argument also proves too much, as it would authorize legislatures to license speech and reduce its constitutional protection by means of the licensing alone.

566 F.3d at 447.  Likewise, the prohibited terms—"psychological," "psychologist," and "psychology"—are not inherently misleading, they merely describe a field of study in which Dr. Serafine is eminently qualified.  Compl. ¶¶ 6–14.  Therefore, Dr. Serafine's use of the prohibited terms is not inherently misleading and her commercial advertisements are subject to heightened constitutional protection.

Accordingly, Defendants must offer evidence to prove that the Psychologists' Licensing Act's prohibition on the truthful use of the words "psychological," "psychologist," and "psychology" directly advances a substantial governmental interest, that the measure is drawn to achieve that interest, and that it reaches no further than necessary.  *Metromedia*, 453 U.S. at 507.

Moreover, Plaintiffs must then have an opportunity to "rebut the [Defendants'] proffered evidence." *Abilene Retail No. 30, Inc*, 492 F.3d at 1174. This evidentiary inquiry is inappropriate at the motion to dismiss stage. *Smith*, 561 F.3d at 1098.

Defendants' burden is not trivial, as they seem to suggest. *Nixon*, 528 U.S. at 379 ("This Court has never accepted mere conjecture as adequate to carry a First Amendment burden."). Defendants contend that this burden may be "established by judicial notice," Defs.' M. to Dismiss at 16, but the Fifth Circuit's decision in *Byrum* illustrates the error of that proposition. There, the Court of Appeals examined the record on summary judgment, including data compiled by the defendants in an attempt to justify a similar restriction on commercial speech. *Byrum*, 566 F.3d at 447–48. The Court of Appeals found the record lacking in that case and struck down the Texas prohibition on commercial speech at issue. *Id*. Thus, even after Defendants have an opportunity to offer evidence in support of their content-based regulations, the Psychologists' Licensing Act may nonetheless be struck down as unconstitutional. Unable as they are at this stage to offer evidence in support of their ban, Defendants' Motion to Dismiss should be denied.

## VI.   THE PSYCHOLOGISTS' LICENSING ACT DRAWS UNREASONABLE DISTINCTIONS THAT UNCONSTITUTIONALLY IMPAIR DR. SERAFINE'S SPEECH RIGHTS.

In addition to the numerous constitutional violations demonstrated above, Dr. Serafine's Sixth Claim for Relief alleges that the Psychologists' Licensing Act also violates the Equal Protection Clause of the Fourteenth Amendment. Compl. ¶¶ 116–24; *W. & S. Life Ins. Co. v. State Bd. of Equalization of California*, 451 U.S. 648, 660 (1981) ("[T]he Fourteenth Amendment, ratified in 1868, introduced the constitutional requirement of equal protection,

21

prohibiting the States from acting arbitrarily or treating similarly situated persons differently . . . .").  This violation arises because Texas Occupations Code § 501.004 makes arbitrary distinctions between licensed professionals who are authorized to practice psychology in Texas. Numerous professionals, including attorneys such as Dr. Serafine, are exempted from the need for a psychology license, but they are nonetheless prevented from describing themselves or their services using the prohibited words:  "psychological" or "psychologist."  Tex. Occ. Code § 501.004(a)(3).  This arbitrary distinction burdens constitutionally protected speech.  *See Parker v. Com. of Ky., Bd. of Dentistry*, 818 F.2d 504 (6th Cir. 1987); *Byrum*, 566 F.3d at 448. Therefore, Defendants "must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest.  There must be a fit between the legislature's ends and the means chosen to accomplish those ends."  *Sorrell*, 131 S. Ct. at 2667–68.  Defendants have failed to meet this high burden.  Accordingly, Defendants' Motion should be denied.

     *Parker v. Com. of Ky., Bd. of Dentistry* is directly on point here.  There, the Commonwealth of Kentucky allowed dentists to practice orthodontics, but prohibited dentists from using the word orthodontics in advertisements without first obtaining a specialist license. 818 F.2d at 505–06.  The Sixth Circuit held that "[i]f a state permits a dentist to perform orthodontic procedures, we do not believe a state can justify an outright ban on the use of particular terms relating to orthodontics on the theory that such terms inherently mislead the public."  *Id*. at 510.

     Similarly, the Fifth Circuit in *Byrum* held that the State of Texas may not allow individuals to engage in interior design but at the same time prohibit the use of generic words

that describe that vocation.  566 F.3d at 448 ("The regulation prohibits significant truthful speech.  Appellants do not propose to claim training, certification, or licenses they do not possess; they merely wish to use the words 'interior designer' or 'interior design' to accurately describe what they do.").

Here, Defendants draw the same distinctions rejected by the courts in *Parker* and *Byrum*, between individuals permitted to perform a vocation and individuals allowed to talk about performing a vocation.  Defendants offer less than a rational basis to support this burden on constitutionally protected speech.  Defs.' Mot. to Dismiss at 18–19.  Defendants' attempted rational basis justification ignores the fact that the Psychologists' Licensing Act "imposes more than an incidental burden on protected expression. . . . . [It] does not simply have an effect on speech, but is directed at certain content and is aimed at particular speakers."  *Sorrell*, 131 S. Ct. at 2665.  Defendants must meet a higher standard when their conduct burdens protected constitutional speech.  *Id*. at 2667–68.

Moreover, even under the rational basis test proposed by Defendants, their argument falls short because it is inconsistent with the plain text of the statute.  Defendants argue that the distinction here is connected to an expectation that exempt individuals will only perform incidental psychological services.  Defs.' M. to Dismiss at 19.  No such limitation on exempt individuals appears in the Psychologists' Licensing Act.  Exempt individuals are allowed to engage in unlimited psychological practice that is related to their professional license.  Indeed, the majority of exempt professionals would be engaged in psychology almost exclusively, particularly given the Act's broad definition of the term.  *See* Tex. Occ. Code § 501.004(b)(5) ("occupational therapist;"); (b)(6) ("licensed social worker"); (b)(7) ("licensed professional

counselor"); (b)(8) ("career counselor"); (b)(9) ("licensed marriage and family therapist");

(b)(10) ("licensed chemical dependency counselor").  The only distinction the statute draws

between exempt individuals and licensed psychologists is the burden on speech placed on the

former.  Defendants have failed to justify this burden on speech.  *Sorrell*, 131 S. Ct. at 2667–68.

Accordingly, Defendants' Motion to Dismiss should be denied.

**VII.   THE PSYCHOLOGISTS' LICENSING ACT UNREASONABLY AND
ARBITRARILY INTERFERES WITH DR. SERAFINE'S RIGHT TO EARN A
LIVING.**

Dr. Serafine's Seventh Claim for Relief alleges that Defendants' enforcement of the

Texas Psychologists' Licensing Act violates her Fourteenth Amendment right to earn a living.

Compl. ¶¶ 125–32.  The Due Process Clause of the Fourteenth Amendment protects Dr.

Serafine's right to earn a living in an occupation of her choice free from unreasonable or

arbitrary government interference.  *See Connecticut v. Gabbert*, 526 U.S. 286, 291–92 (1999)

("the liberty component of the Fourteenth Amendment's Due Process Clause includes some

generalized due process right to choose one's field of private employment, but a right which is

nevertheless subject to reasonable government regulation"); *Lowe v. SEC*, 472 U.S. 181, 228

(1985) (citizens have a right to follow any lawful calling subject to licensing requirements that

are related to their fitness or capacity to practice the profession); *Bd. of Regents v. Roth*, 408 U.S.

564, 572 (1972) (recognizing the right "to engage in any of the common occupations of life");

*Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 238–39 (1957) ("[a] State cannot exclude a person

from the practice of law or from any other occupation in a manner or for reasons that contravene

the Due Process or Equal Protection Clause of the Fourteenth Amendment"); *Meyer v. Nebraska*,

262 U.S. 390, 399–400 (1923) (Fourteenth Amendment's conception of "liberty" includes the right "to engage in any of the common occupations of life").

Defendants argue that the Psychologists' Licensing Act is constitutional under the Due Process Clause of the Fourteenth Amendment for "essentially the same reasons as examined in all the preceding sections" because "the right to earn a living is judged by the same deferential rational basis standard as for the plaintiff's equal protection challenge." Defs.' Mot. to Dismiss 20–21. Though deferential, the rational basis test is not "toothless." *Mathews v. Lucas*, 427 U.S. 495, 510 (1976); *see also Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002) (striking down Tennessee law that allowed only state-licensed funeral directors to sell caskets). As demonstrated above, the Psychologists' Licensing Act's definition of the practice of psychology is unconstitutionally vague, the Act contains numerous exceptions from the requirement of obtaining a license, and it prohibits exempt individuals from using certain terms to describe themselves and their work. These factors undermine the Psychologists' Licensing Act's purpose of protecting the public from unqualified practitioners in the field of psychology.

If the Psychologists' Licensing Act were rationally related to this government interest, then the state would both require more individuals to obtain a psychologist license by removing the exemptions listed in Section 501.004 and better define what constitutes the practice of psychology in Section 501.003. Currently, the law applies to K-12 teachers, athletic coaches, and management consultants but exempts some individuals, *e.g.* members of the clergy, who have a more direct effect on a person's mental health. *See* Tex. Occ. Code § 501.004(a)(4). The distinctions the Act draws are unreasonable and arbitrary and, thus, unconstitutional. *See Gabbert*, 526 U.S. at 291–92. Defendants have done little to attempt to justify the Act's burden

on the right to earn a living, and at the motion to dismiss stage no record can be established to support Defendants' assertions that this burden is necessary.  Accordingly, Defendants' Motion to Dismiss should be denied.

Dr. Serafine's right to earn a living is also protected by the Privileges or Immunities Clause of the Fourteenth Amendment.  Defendants' argument proceeds from an apparent misunderstanding of the nature of Dr. Serafine's claims, which are brought under the Privileges or Immunities Clause of the Fourteenth Amendment, not the Privileges and Immunities Clause of Article IV.  Defendants argue that "[b]ecause she does not plead any facts showing, even implicitly, discrimination based on residency, she has no claim under the Privileges and [sic] Immunities Clause."  Defs.' Mot. to Dismiss at 20.  In support of that proposition Defendants cite *Hawkins v. Moss*, 503 F.2d 1171, 1180 (4th Cir. 1974).  Although *Moss* addressed right to travel claims arising under the Fourteenth Amendment, the passage upon which Defendants rely concerned Article IV.  Because the Complaint does not state any claim for relief under the Privileges and Immunities Clause of Article IV, *Moss* is inapposite.

Defendants also cite *Merrifield v. Lockyer*, 547 F.3d 978, 984 (9th Cir. 2008) and *Powers v. Harris*, 379 F.3d 1208, 1214 (10th Cir. 2004) for the proposition that the Privileges or Immunities Clause of the Fourteenth Amendment does not protect Dr. Serafine's right to earn a living.  While these cases do address the Privileges or Immunities Clause of the Fourteenth Amendment, they are of limited precedential value.  Not only are they from other circuits, but both fail to address the shift in legal scholarship demonstrated in Justice Thomas's concurring opinion in *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010).  Justice Thomas urged a reawakening of the Privileges or Immunities Clause, which had theretofore been enlisted

26

to protect only a handful of rights, such as the right to travel.  130 S. Ct. at 3058–87 (Thomas, J.,

concurring).  The Supreme Court has held, however, that it "determined long ago that . . .'[i]t is

undoubtedly the right of every citizen of the United States to follow any lawful calling, business,

or profession he may choose.'"  *Lowe*, 472 U.S. at 228 (quoting *Dent*, 129 U.S. 114, 121–22

(1889)); *see also United Bldg. & Constr. Trades Council v. Mayor of Camden*, 465 U.S. 208,

219 (1984) ("[T]he pursuit of a common calling is one of the most fundamental of those

privileges protected by the [Constitution]."); *DiMartini v. Ferrin*, 906 F.2d 465, 466 (9th Cir.

1990) (citing cases holding that the right to earn a living is protected under the Fourteenth

Amendment).

Scholarly commentary has established that the Privileges or Immunities Clause

incorporates this right to pursue a lawful calling.  *See, e.g.*, John C. Eastman, *Re-Evaluating the

Privileges or Immunities Clause*, 6 CHAP. L. REV. 123 (2003); David R. Upham, *Note: Corfield

v. Coryell and the Privileges and Immunities of American Citizenship*, 83 TEX. L. REV. 1483

(2005).  The right to earn a living was recognized for centuries at common law, *see, e.g., Darcy

v. Allen*, 77 Eng. Rep. 1260 (K.B. 1602); *Allen v. Tooley*, 80 Eng. Rep. 1055 (K.B. 1614), and, as

Senator John Sherman (one of the architects of the Fourteenth Amendment) explained, courts

interpreting the Clause should "look first at the Constitution . . . [then] to the common law of

England . . . .   There they will find the fountain and reservoir of the rights of American as well as

English citizens."  Cong. Globe, 42d Cong., 2d Sess. 844 (1872).  As stated above, the

Psychologists' Licensing Act's burden on speech is unreasonable government interference with

Dr. Serafine's right to hold specific private employment and unconstitutional under the Due

process and Privileges or Immunities Clauses of the Fourteenth Amendment.  Accordingly,

Defendants' Motion to Dismiss should be denied.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.  Should this

Court find Plaintiff's Complaint deficient for any reason, Plaintiff respectfully requests leave to

file an amended complaint.

DATED this 19th day of January 2012.

Respectfully Submitted:

/s/ James M. Manley
James M. Manley (admitted pro hac vice)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
303-292-2021
jmanley@mountainstateslegal.com

John R. Hays, Jr. (Texas Bar No. 09303300)
Hays & Owens LLP
807 Brazos Street
Suite 500
Austin, Texas 78701
Phone:  512-472-3993
Fax:  512-472-3883
john.hays@haysowens.com

# APPENDIX

Vernon's Texas Statutes and Codes Annotated

Occupations Code (Refs & Annos)

Title 3. Health Professions

Subtitle I. Regulation of Psychology and Counseling

Chapter 501. Psychologists

Subchapter A. General Provisions

V.T.C.A., Occupations Code § 501.003

§ 501.003. Practice of Psychology

Currentness

(a) In this section, "psychological services" means acts or behaviors that are included within the purview of the practice of psychology.

(b) A person is engaged in the practice of psychology within the meaning of this chapter if the person:

(1) represents the person to the public by a title or description of services that includes the word "psychological," "psychologist," or "psychology";

(2) provides or offers to provide psychological services to individuals, groups, organizations, or the public;

(3) is a psychologist or psychological associate employed as described by Section 501.004(a)(1) who offers or provides psychological services, other than lecture services, to the public for consideration separate from the salary that person receives for performing the person's regular duties; or

(4) is employed as a psychologist or psychological associate by an organization that sells psychological services, other than lecture services, to the public for consideration.

(c) The practice of psychology:

(1) includes providing or offering to provide services to an individual or group, including providing computerized procedures, that include the application of established principles, methods, and procedures of describing, explaining, and ameliorating behavior;

(2) addresses normal behavior and involves evaluating, preventing, and remediating psychological, emotional, mental, interpersonal, learning, and behavioral disorders of individuals or groups, as well as the psychological disorders that accompany medical problems, organizational structures, stress, and health;

(3) includes:

(A) using projective techniques, neuropsychological testing, counseling, career counseling, psychotherapy, hypnosis for health care purposes, hypnotherapy, and biofeedback; and

(B) evaluating and treating mental or emotional disorders and disabilities by psychological techniques and procedures; and

(4) is based on:

(A) a systematic body of knowledge and principles acquired in an organized program of graduate study; and

(B) the standards of ethics established by the profession.

**Credits**
Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1, 1999.

**Editors' Notes**

**REVISOR'S NOTE**

**2004 Main Volume**

(1) Section 2(c), V.A.C.S. Article 4512c, refers to any service "that involves but is not restricted to" procedures specified in the statute. The revised law substitutes a reference to services "that include" procedures specified in the statute. The revised law omits "but not restricted to" as unnecessary because Section 311.005(13), Government Code (Code Construction Act), provides that "includes" and "including" are terms of enlargement and not of limitation and do not create a presumption that components not expressed are excluded.

(2) Section 22(a), V.A.C.S. Article 4512c, refers to a "fee, monetary or otherwise." The revised law substitutes "consideration" for the quoted phrase because "consideration" includes the concept of both monetary and nonmonetary payment.

Current through the end of the 2011 Regular Session and First Called Session of the 82nd Legislature

**End of Document**                                        © 2012 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

       I hereby certify that on this 19th day of January 2012, I filed the foregoing through the CM/ECF system, which caused the following to be served by electronic means:


James C. Todd
Assistant Attorney General
Office of the Attorney General
General Litigation Division-019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
jim.todd@oag.state.tx.us


                        /s/ James M. Manley
                        James M. Manley