IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DR. MARY LOUISE SERAFINE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:11-CV-01018 |
| | § | |
| TIM F. BRANAMAN, Chairman, Texas | § | |
| State Board of Examiners of Psychologists, | § | |
| in his official capacity; *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

TO THE HONORABLE LEE YEAKEL:

As their reply pursuant to W.D. L. R. CV-7(e), to the plaintiffs' response (ECF doc. 25) to

their motion to dismiss under FED. R. CIV. P. 12(b)(6) (doc. 18), the defendants respectfully submit

the following.

**1.      The Plaintiff's Speech at Issue is not Protected by the First Amendment.**

All of the plaintiff's claims depend on the Court's determining, as a matter of law, that the

speech at issue – the plaintiff's holding herself out as a "psychologist," describing her services as

"psychological," or communicating with clients in the process of providing psychological services,

without the license required by state law to practice psychology – is protected by the First

Amendment. *E.g.*, doc. 25 at 5-6 (defendants' burden to show compelling interest, etc.), 11 n. 4

(attempting to distinguish *Roark*), 17 (requiring license to engage in speech presumed

unconstitutional), 18-19 (defendants' burden), 21 (commercial speech).   Even for her due process

vagueness claim and her equal protection claim, she relies on her putative protected speech to invoke

1

a level of scrutiny sufficient to invalidate the challenged statutes and regulations. *Id.* at 11, 22.  The alleged "burden on speech" is also a key element of her putative "right to earn a living" claim. *Id.* at 27-28.

This overarching issue is ready to be decided now, on the pleadings, as a matter of law. *Charles v. Grief*, 522 F.3d 508, 512 (5th Cir. 2008) ("Whether [plaintiff] engaged in protected speech is a purely legal question"); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 547 (5th Cir. 2001) (whether speech at issue is protected commercial speech is question of law).  Under the plaintiff's cited authorities, the defendants' duty to offer, and the plaintiff's opportunity to rebut, "evidence to prove that the Psychologists' Licensing Act 'furthers a compelling interest and is narrowly tailored to achieve that interest'" (doc. 25 at 5, 18-19, 20-21) arises only after the Court has determined, as a matter of law, that the speech in question is protected by the First Amendment and is subject to higher than minimal scrutiny.

As shown in the discussion below, the plaintiff never clears this obstacle. The decisions on which she relies concern traditional First Amendment topics that are not analogous to the speech in her case.  She offers no cases in which a court either applied the highest First Amendment scrutiny to speech comparable to hers or disagreed with the authority cited by the defendants holding that such speech is not protected.  Doc. 18 at 6, 8; *see especially id.* at 6 (quoting *Accountant's Soc. of Va. v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988)).

If the type of activity in which the plaintiff seeks to engage without answering to the defendants is protected speech imposing the legal burdens claimed, it is difficult to see how the state could set professional standards for legal or medical practice or to require a license before one can represent herself as an attorney or medical doctor.  The result, which would effectively eviscerate

state regulation of professional practice, might satisfy the anti-regulatory agenda of free marketeers, but the Constitution does not incorporate that or any other economic philosophy. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691 (1999) (citing *Lochner v. New York*, 198 U.S. 45, 75 (1905) (HOLMES, J., dissenting)).

.2.     **The Plaintiff Cannot State a Claim Based on Far-Fetched Hypotheticals.**

Another fatal defect that permeates the plaintiff's response is her reliance on implausible conjecture as to how the literal words of various challenged provisions *could* conceivably be applied. *E.g.*, doc. 25 at 11 ("casual discussion or lesson involving the psychological aspects of golf"), 13 ("teaching from books that delve into the psychology of activities"), 14 ("casual conversation that touches on issues that are, arguably, psychological in nature"), 20 (*any* "use of the words 'psychological,' 'psychologist,' and 'psychology'"), 25 ("K-12 teachers, athletic coaches, and management consultants"). The plaintiff does not allege that the defendants have ever actually enforced the contested laws in any of these manners, much less in her case.

The Supreme Court has consistently rejected First Amendment challenges that depend on overly broad readings of the challenged enactments or far-fetched hypothetical applications. *E.g.*, *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) (potential abuse posited by plaintiffs "must be dealt with if [it] appears, rather than by insisting upon a degree of rigidity that is found in few legal arrangements"); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 583-84 (1998) ("we are reluctant . . . to invalidate legislation on the basis of its hypothetical application to situations not before the Court"); *Hill v. Colo.*, 530 U.S. 703, 733 (2000) ("speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications'"). *Accord Hersh v. U.S. ex rel.*

*Mukasey*, 553 F.3d 743, 762 (5ᵗʰ Cir. 2008) ("The fact that a court can hypothesize situations in which the statute will impact protected speech is not alone sufficient.")

3.     **The Plaintiff has no Viable Claim for Abridgement of Political Speech.**

It requires no "linguistic gymnastics" (doc. 25 at 6) for the plaintiff to simply inform voters that, for example, she has been named by a "Who's Who" publication to a list of women psychologists (*id*. at 8 (citing doc. 1 ¶ 7)), without representing herself as currently a psychologist in Texas.  If "Dr. Serafine's background and training define her identity" (*id*. at 7), she can describe her background and training (*e.g.*, she can tell voters she "completed four years of postdoctoral training in psychology at Yale University" (doc. 1 ¶ 12)) without claiming to be a psychologist in this state.

The plaintiff relies on the fractured *Buckley* decision[1] for her assertion that calling herself a "psychologist" on her campaign website is protected by the First Amendment as speech "communicating with voters about a candidate's identity."  Doc. 25 at 6 (citing *Buckley v. Valeo*, 424 U.S. 1, 14-15 (1976) (per curiam)).  But on the pages cited, the opinion declares that, in keeping with the First Amendment purpose of protecting "political expression in order 'to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people,'" discussion of a candidate's "identity" is protected so as to enhance the "ability of the citizenry to make informed choices among candidates."  *Id.*  However, the plaintiff's "inherently misleading" representation of herself as a psychologist – *see Abramson v. Gonzalez*, 949 F.2d 1567, 1583 (11ᵗʰ Cir. 1992) (citing *Accountant's Soc'y of Va.*, 860 F.2d at 604-05) – is contrary to that purpose

_____

[1]  The *per curiam* opinion was accompanied by five partial dissents among the eight justices who participated in the decision.

4

because it is not "truthful campaign speech" as she claims (doc. 25 at 9). *Byrum* (*id*. at 9-10) is not to the contrary. The speech in that case was not misleading because the state did not require a license for anyone to practice the occupation in question. Doc. 18 at 9.

Neither *Buckley* nor *Riley* rejects the defendants' observation that the plaintiff's portrayal of herself as a "psychologist" is only incidental to the *bona fide* political speech of her campaign for electoral office. Doc. 25 at 7. The presumption that speakers know best what they want to say (*id*. (quoting *Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781, 790–91 (1988))) is inapplicable to the situation in which what the speaker knows she wants to say is subject to legitimate state professional licensing and regulation.

**4.     The Plaintiff has no Viable Claim for Vagueness.**

The plaintiff's reliance on cases invalidating anti-loitering ordinances is misplaced. Doc. 25 at 10-12 (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), and *City of Chicago v. Morales*, 527 U.S. 41 (1999) (plurality)). In those decisions, the Court expressly distinguished state regulation of businesses and occupations. *Papachristou*, 405 U.S. at 162 ("In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed."); *Morales*, 527 U.S. at 55 ("This is not an ordinance that 'simply regulates business behavior'").

The measures invalidated in *Papachristou* and *Morales*, in which "no standard of conduct is specified at all," came nowhere near the specificity of the statutes and regulations challenged in this case. As a consequence, the plaintiff has not cited any cases, much less any dealing with state regulation of licensed professions, in which language equivalent or comparable to that at issue in this case was held to be unconstitutionally vague. For example, in *Solomon v. City of Gainesville*, 763

F.2d 1212 (11th Cir. 1985) (per curiam) (doc. 25 at 12), the court struck down an ordinance prohibiting street signs "displaying any statement, word, character or illustration of an obscene, indecent or immoral nature." *Id.* at 1213.

By contrast, courts have repeatedly upheld, against vagueness attacks, regulatory language no more precise, and no more narrow in scope, than that in contention here. *E.g.*, *Thomas*, 532 U.S. at 324 ("unreasonable danger to the health or safety of the . . . public"); *Howell v. State Bar of Tex.*, 843 F.2d 205, 206 (5th Cir. 1988) ("conduct that is prejudicial to the administration of justice"). The plaintiff's own authorities are in accord. In *Holder* (doc. 25 at 16), the Court upheld, as not vague, a statute "which makes it a federal crime to knowingly provide material support or resources to a foreign terrorist organization," defining "material support" to include, without further elaboration, "service, . . . training, expert advice or assistance," and "personnel." *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2712-13 (2010) (brackets and internal quotation marks omitted). In *Grayned* (doc. 25 at 11, 13), the Supreme Court upheld an ordinance that prohibited the "willful making of any noise or diversion which disturbs or tends to disturb the peace or good order of [a] school session or class thereof." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

> Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by "flexibility and reasonable breadth, rather than meticulous specificity," but we think it is clear what the ordinance as a whole prohibits.

*Id*. at 110-11 (footnote and citation omitted).

## 5.    The Plaintiff has no Viable Claim for Overbreadth.

The order of analysis preferred by the Fifth Circuit (doc. 18 at 10) indicates that if a law is not unconstitutionally vague it is highly unlikely to be overbroad. The plaintiff's overbreadth claim

depends on an overly broad reading of the challenged statute, asserting that it "covers *any* political speech or *casual* conversation that *touches* on issues that are, *arguably*, psychological in nature." Doc. 25 at 14 (emphasis added).  What a law covers, expressly or by necessary implication, is quintessentially a question of law.  The plaintiff does not allege that the defendants have ever applied the statute or rule to mean anything nearly so far-reaching.  What the challenged statutes and rules prohibit is not any and every use of the terms "psychologist," "psychological," or "psychology," but only their public use to describe the title or services of an unlicensed practitioner.

The plaintiff nevertheless argues that the statute is overbroad because "there is no requirement that a commercial transaction be proposed in order for an individual to come within Defendants' jurisdiction under the Psychologists' Licensing Act."  *Id.* at 15.  By the plaintiff's reasoning, merely by omitting an overt reference to fees for service, an unlicensed individual who describes herself to the public by a title requiring state licensure is beyond the reach of state regulation, even though her representation could induce members of the public to seek her out for paid services.  As with the asserted exception above, for anything said in conjunction with a campaign for public office, the plaintiff here would create a gaping loophole that could incapacitate state regulation of licensed professions.

**6.      The Plaintiff has no Viable Claim for Prior Restraint.**

As with her other claims, the plaintiff's case for prior restraint depends on the legal conclusion that the "speech" at issue is protected by the First Amendment.  But the speech examined in the decisions on which she relies is not analogous to the speech in which she seeks to engage.

In *Holder*, the Court did not hold categorically that all expert advice and assistance is protected speech.  Doc. 25 at 16.  There, the "expert advice" fell within the ambit of the First

Amendment – though not enough to invalidate the statute – because the plaintiffs provided it, not to achieve a therapeutic or other professional practice purpose, but to "communicat[e] a message," *i.e.*, to "provide material support . . . in the form of speech," to assist organizations, with which they sympathized, accomplish their mission.[2]  *Holder*, 130 S.Ct. at 2724.  *See U.S. v. Augustin*, 661 F.3d 1105, 1120 (11th Cir. 2011) ("more rigorous scrutiny applied because 'the conduct triggering coverage under the statute consists of communicating a message'") (explaining *Holder*, 130 S.Ct. at 2724).

In *Riley*, the activity subject to licensure consisted substantially of "the dissemination of ideas."  *Riley*, 487 U.S. at 803 (SCALIA, J., concurring) (citing *id.* at 787-88, *inter alia*).  The activity licensed by the defendants in this case is the provision of a specialized category of health-related services, which, like the practice of law, is achieved in part through the use of language.  As the plaintiff's own authority points out:

> The power of government to regulate the professions is not lost whenever the practice of a profession entails speech. . . . Perhaps the most obvious example of a "speaking profession" that is subject to governmental licensing is the legal profession. Although a lawyer's work is almost entirely devoted to the sort of communicative acts that, *viewed in isolation*, fall within the First Amendment's protection, we have never doubted that "a State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar."

*Lowe v. S.E.C.*, 472 U.S. 181, 228-29 (1985) (WHITE, J., concurring) (doc. 25 at 24, 27) (emphasis added, brackets omitted).

In *Argello*, the issue was not whether the state could insist that only licensees use certain terms to describe themselves or their services; instead, it was whether the state could ban the practice

---

[2] This included teaching them "how to use humanitarian and international law to peacefully resolve disputes" and "how to petition various representative bodies such as the United Nations for relief."  *Id.* at 2729.

of an occupation altogether based on the content of its message. *Argello v. City of Lincoln*, 143 F.3d 1152, 1152-53 (8th Cir. 1998). The Fifth Circuit decision in *Brown*, upholding a trial judge's order generally prohibiting attorneys, parties, and witnesses from discussing the case with any public communications media, noted that "gag orders *such as this one* still exhibit the characteristics of prior restraints."[3]  *U.S. v. Brown*, 218 F.3d 415, 423-24 (5th Cir. 2000) (emphasis added).

The plaintiff attempts to distinguish *Nat'l Ass'n for Advancement of Psychoanalysis* on the basis that the restrictions in that case were supported by legislative findings. Doc. 25 at 18 (citing *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1047 (9th Cir. 2000)). Beyond the fact that nowhere does that decision say such findings are *required*, note that the findings "recognized the actual *and potential* consumer harm that can result from the unlicensed . . . practice of psychology," with no finding of clear and present danger or imminent threat of harm. *Id.* (emphasis added).

**7.      The Plaintiff has no Viable Claim for Abridgement of Commercial Speech.**

The plaintiff's commercial speech claim depends on the Court's holding, as a matter of law, that the challenged laws impose a "prohibition on the truthful use of the words 'psychological,'

---

[3] As in the discussion above, the plaintiff's argument that the defendants must present evidence to justify the putative "prior restraint," which she must have the opportunity to rebut (doc. 25 at 18-19), relies on cases dealing with traditional protected speech that is not analogous to the kind at issue in this case. *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 387-89 (2000) (campaign contribution limit involving "significant interference" with associational rights can survive if government demonstrates that contribution regulation was closely drawn to match a sufficiently important interest); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438-39 (2002) (plurality) (upholding law prohibiting the operation of multiple adult businesses in a single building). Note that weighing of evidence is not required to establish whether speech is protected. *Id.* at 440-41. In *Abilene Retail No. 30, Inc. v. Bd. of Comm'rs*, 492 F.3d 1164, 1170 (10th Cir. 2007), the court upheld zoning ordinances regulating the location and operation of sexually oriented businesses. *Smith* was not a First Amendment case at all. *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (*pro se* prisoner alleging he was exposed to asbestos while assigned to work at prison stated claim for cruel and unusual punishment).

'psychologist,' and 'psychology.'" Doc. 25 at 19.  As shown above, courts have consistently held comparable speech – such as calling oneself a "public accountant" without state certification as such – to be inherently misleading.  *Abramson*, 949 F.2d at 1583 (citing *Accountant's Soc'y of Va.*, 860 F.2d at 604-05).  *See also Friedman v. Rogers*, 440 U.S. 1, 13-16 (1979) (Texas could prohibit practice of optometry under trade name without violating commercial speech rights, to protect public from potential for being misled).

Moreover, the state is entitled to rely on the holdings of prior judicial decisions on analogous facts, to support its conclusions as to potential deception.  *Id.* at 14-15 (Texas Legislature could rely on *Tex. State Bd. of Exam'rs in Optometry v. Carp*, 412 S.W.2d 307 (Tex. 1967)).  Courts have consistently found restrictions such as those attacked in this case to be justifiable safeguards against potential deception.  *E.g.*, *Brandwein v. Cal. Bd. of Osteopathic Exam'rs*, 708 F.2d 1466, 1469-70 (9th Cir. 1983) (misleading for doctor of osteopathic medicine to call himself doctor of medicine); *Kale v. S.C. Dept. of Health and Env'l Control*, 391 S.E.2d 573, 574 (S.C. 1990) (misleading for chiropractors to call their facility "chiropractic hospital" when state law defined "hospital" as "under the direction of persons currently licensed to practice medicine, surgery, or osteopathy"); *Parmley v. Mo. Dental Bd.*, 719 S.W.2d 745, 747-53 (Mo. 1986) ("potential deception" justified prohibiting dentist who was member of American Academy of Pedodontics but not certified by state as specialist in pedodontics from "isolated use of the word 'pedodontist' in advertising").

As previously shown, the commercial speech in *Byrum* was not misleading (doc. 25 at 19, 21, 22) because the state did not require a license to practice interior decorating.  Doc. 18 at 9.  Because, by contrast, the plaintiff's speech in this case is not protected commercial speech, the inquiry need not go further.  *Goodman v. Ill. Dept. of Fin. and Prof'l Regulation*, 430 F.3d 432, 438

(7th Cir. 2005) ("analysis of a commercial speech claim ends once it is determined that the speech is not protected").

**8.      The Plaintiff has no Viable Claim for Denial Of Equal Protection.**

The plaintiff argues that it is arbitrary to allow a licensed attorney to engage in some of the activities that fall under the definition of the practice of psychology but not to allow her to describe herself as a "psychologist" or her services as "psychological." Doc. 25 at 22-23. This arrangement avoids needlessly impeding professionals whose legitimate professional services overlap somewhat with those of a psychologist, while at the same time protecting consumers from the misleading representation that a lawyer is a psychologist or practices psychology *per se.* By limiting the exception to a narrow set of licensed professions, the statute protects the public by giving clients access to a state licensing board to complain of misuse of the service. *See* doc. 18 at 9-10, 19-20. Because there is thus a reasonably conceivable state of facts that could provide a rational basis for the alleged difference in treatment, the contested restrictions pass constitutional muster under the equal protection clause. *Cabral v. Holder*, 632 F.3d 886, 892 (5th Cir. 2011).

**9.      The Plaintiff has no Viable Claim for Deprivation of her Right to Earn a Living.**

Even assuming for argument's sake that Justice Thomas's concurrence in *McDonald*, in which no other justice joined, opining that the Fourteenth Amendment's privileges and immunities clause creates substantive rights rather than just protection from discrimination against citizens of other states, will eventually become law;[4] and assuming further that the "right to earn a living" is

---

[4]  Because Justice Thomas's concurring opinion, which admittedly "is contrary to this Court's precedents" (*id*. at 3084), does not provide a narrower ground for the decision, it is not the holding of the Court. *Marks v. U.S.*, 430 U.S. 188, 193 (1977). Justice Thomas argues that the Second Amendment right to keep and bear arms is made binding on the states by the Fourteenth Amendment's privileges and immunities clause, rather than, as held by the plurality, by the due process clause. *McDonald*, 130 S.Ct. at

among those substantive rights,[5] no authority holds that the right created by this clause extends any farther than the parallel due process right to earn a living.  Doc. 25 at 26-27 (citing *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3058-87 (2010) (THOMAS, J., concurring)).  Indeed, the decisions cited in doc. 25 at 24-25 are all due process cases.

It is remarkable, then, that the plaintiff relies so heavily on *Gabbert* and Justice White's concurrence[6] in *Lowe*.  *Id.* at 24-25 (citing *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) (quoting *Dent v. State of W.Va.*, 129 U.S. 114, 121 (1889)), and *Lowe*, 472 U.S. at 228 (WHITE, J., concurring) (also relying on *Dent*)).  The cited passages in *Gabbert* and *Lowe* also discuss the other cases relied on by the plaintiff here (*Roth*, *Meyer*, and *Schware*).  Immediately following the sentence quoted by the plaintiff from *Gabbert* (quoting from *Dent*), as to the "due process right to choose one's field of private employment," the *Dent* holding continues, in relevant part, that "there is no arbitrary deprivation of such right" when the state bars an individual from practicing a profession due to that person's "failure to comply with conditions imposed by the state for the protection of society."  *Dent*, 129 U.S. at 122.

> The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud.  As one means to this end it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; their possession being . . . inferred from a certificate to them in the form of a . . . license . . . The nature and extent of the

---

3059, 3088.

[5]  "Because this case does not involve an unenumerated right, it is not necessary to resolve the question whether the Clause protects such rights . . ."  *Id.* at 3086.

[6]  The majority did not reach the First Amendment claim, deciding the case instead on the basis of a statutory provision exempting the plaintiff's type publication from the regulation at issue.  *Id.* at 204

> qualifications required must depend primarily upon the judgment of the state as to
> their necessity.  If they are appropriate to the calling or profession, and attainable by
> reasonable study or application, no objection to their validity can be raised because
> of their stringency or difficulty.

*Id.  Accord Lowe*, 472 U.S. at 228 ("The Court determined long ago that *although* it is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, *there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed for the protection of society*.") (brackets ellipses, and internal quotation marks omitted; italicized portion omitted from quotation in doc. 25 at 27); *U.S. v. Farhane*, 634 F.3d 127, 137 (2nd Cir. 2011) (no constitutional right to practice medicine) (citing *Gabbert*, 526 U.S. at 291–92).

> The police power of the State includes the power to enact comprehensive, detailed,
> and rigid regulations for the practice of medicine, surgery, and dentistry.  There is no
> right to practice medicine which is not subordinate to the police power.
> Unchallenged is the right of the States to license or otherwise regulate or provide for
> such basic services in our society as . . . health services.

*Garcia v. Tex. State Bd. of Med. Exam'rs*, 384 F. Supp. 434, 437 (W.D. Tex. 1974) (3-judge panel) (citations omitted), *aff'd*, 421 U.S. 995 (1975).

## CONCLUSION

In view of all the foregoing, the defendants respectfully urge that all of the plaintiff's claims against them be dismissed.

Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

13

DAVID C. MATTAX
Deputy Attorney General for Defense
Litigation

ROBERT O'KEEFE
General Litigation Division Chief

  /s/   James C. Todd
JAMES C. TODD
Texas Bar No.  20094700
Assistant Attorney General
Office of the Attorney General
General Litigation Division-019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120  (512) 320-0667 FAX
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent *via* the Court's electronic notification system on this the 3rd day of February, 2012, to:

John R. Hays, Jr., Esq.
Hays & Owens, LLP
807 Brazos Street, Suite 500
Austin, Texas 78701
john.hays@haysowens.com

James M. Manley, Esq.
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
jmanley@mountainstateslegal.com

  /s/   James C. Todd
JAMES C. TODD
Assistant Attorney General

14